Andrew J. Kopke, SBN 340036
Kopke Christiana & Rastetter LLP
199 Cook Street, Suite 308
Brooklyn, NY 11206
t/f: (917) 451-9525
e: andrew@kcrllp.com

*Attorneys for Plaintiff*
*Michael Chavez*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHAEL CHAVEZ,<br><br>              Plaintiff,<br><br>       vs.<br><br>ROB ST. ANDRE, MITCHELL KNEDLER, DARROW RICHARDSON, JONATHAN YOCIUS, JUAN MEJIA, MICHAEL SHERMAN, DOES 1-10, inclusive,<br><br>              Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES**<br><br>**FAILURE TO PROTECT**<br>(42 U.S.C. § 1983)<br><br>**DEMAND FOR JURY TRIAL** |

   Plaintiff MICHAEL CHAVEZ ("Plaintiff" or "CHAVEZ"), through his attorneys at Kopke Christiana & Rastetter LLP, hereby alleges upon information, belief, and personal knowledge:

**JURISDICTION AND VENUE**

1. This civil rights action is brought pursuant to 42 U.S.C. § 1983 for violations of Plaintiff's rights under the Eighth Amendment to the United States Constitution.
2. Jurisdiction is conferred on this Court by 28 U.S.C. § 1331, which provides for jurisdiction over all cases brought under the constitution and laws of the United States, and by 28 U.S.C. § 1334, which provides for jurisdiction over all actions brought pursuant to § 1983.

3. Venue is proper in the Eastern District of California pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to this action occurred in this judicial district.

4. Intradistrict venue is proper in Sacramento pursuant to Local Rule 120(d), because a substantial part of the events giving rise to this action occurred in Lassen County, California.

5. Because Plaintiff is presently an inmate in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), this action is subject to the exhaustion requirement of the Prison Litigation Reform Act ("PLRA"). Plaintiff satisfied the exhaustion requirement by filing a form 602-1 grievance related to the events giving rise to this action. Plaintiff's grievance was identified as an allegation of staff misconduct and referred outside the CDCR grievance and appeals process for investigation, which "exhaust[ed] all administrative remedies available to [Plaintiff] for this claim." Subsequently, Plaintiff received a memorandum stating that an investigation of his staff misconduct grievance determined it was not sustained.

## PARTIES

6. Plaintiff MICHAEL CHAVEZ (CDCR No. K00104) ("Plaintiff" or "CHAVEZ") is 49-year-old man who is currently incarcerated at the Substance Abuse Treatment Facility in Corcoran, California. At all times relevant to this action, CHAVEZ was incarcerated at High Desert State Prison ("HDSP") in Susanville, California.

7. At all times relevant to this action, Defendant ROB ST. ANDRE ("ST. ANDRE") was a correctional official and Warden at HDSP. ST. ANDRE is sued in his individual capacity for acts committed under color of state law and within the scope of his duty and authority as an official, employee, and agent for CDCR.

8. At all times relevant to this action, Defendant MITCHELL KNEDLER ("KNEDLER") (CDCR No. 58742) was a correctional official and Facility C Captain at HDSP. KNEDLER is sued in his individual capacity for acts committed under color of state law

2

and within the scope of his duty and authority as an official, employee, and agent for CDCR.

9. At all times relevant to this action, Defendant DARROW RICHARDSON (CDCR No. 61617) ("RICHARDSON") was a correctional official and lieutenant/acting Facility C Captain at HDSP. RICHARDSON is sued in his individual capacity for acts committed under color of state law and within the scope of his duty and authority as an official, employee, and agent for CDCR.

10. At all times relevant to this action, Defendant JONATHAN YOCIUS (CDCR No. 91380) ("YOCIUS") was a correctional official and observation officer/tower guard on the C Yard at HDSP. YOCIUS is sued in his individual capacity for acts committed under color of state law and within the scope of his duty and authority as an official, employee, and agent for CDCR.

11. At all times relevant to this action, Defendant JUAN MEJIA (CDCR No. 88579) ("MEJIA") was a correctional official and officer on the C Yard at HDSP. MEJIA is sued in his individual capacity for acts committed under color of state law and within the scope of his duty and authority as an official, employee, and agent for CDCR.

12. At all times relevant to this action, Defendant MICHAEL SHERMAN ("SHERMAN") (CDCR No. 95519) was a correctional official and officer on the C Yard at HDSP. SHERMAN is sued in his individual capacity for acts committed under color of state law and within the scope of his duty and authority as an official, employee, and agent for CDCR.

13. At all times relevant to this action, Defendants DOES 1-5 were correctional officials at HDSP who were responsible for processing/searching inmates prior to their entry onto the C Yard and/or for intervening to prevent/quell inmate-on-inmate violence on the C Yard. As of the date of this action's filing, Plaintiff is ignorant of these defendants' true names and badge numbers. Accordingly, these defendants are fictitiously named as DOES 1-5. DOES 1-5 are sued in their individual capacity for acts committed under

color of state law and within the scope of their duty and authority as officials, employees, and agents for CDCR.

14. At all times relevant to this action, Defendants DOES 6-10 were correctional officials at HDSP who were responsible for devising and implementing policies and procedures necessary to prevent/quell inmate-on-inmate violence, especially, but not limited to, violence committed by the Aryan Brotherhood (the "AB") and involving the use of inmate manufactured metal knives. As of the date of this action's filing, Plaintiff is ignorant of these defendants' true names and badge numbers. Accordingly, these defendants are fictitiously named as DOES 6-10. DOES 6-10 are sued in their individual capacity for acts committed under color of state law and within the scope of their duty and authority as officials, employees, and agents for CDCR.

## CLAIM FOR RELIEF

## FAILURE TO PROTECT

(42 U.S.C. § 1983)

13. Inmates in California state custody have a right to be protected from violence at the hands of guards and other inmates. This right is secured by the Eighth Amendment to the United States Constitution and imposes on prison officials a duty to take reasonable steps to protect inmates from serious threats to their safety.

14. To prove that an official violated this right, a plaintiff must prove that:
    a. The official made an intentional decision with respect to the plaintiff's conditions of confinement;
    b. Those conditions put the plaintiff at substantial risk of suffering serious harm;
    c. The official did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the official's conduct obvious; and
    d. By not taking such measures, the official caused the plaintiff's injuries.

15. With respect to the third element, the plaintiff must prove that the official's conduct was both objectively unreasonable and done with a subjective awareness of the risk of harm.

16. A plaintiff need not prove that the risk of harm came from a single source. Nor must a plaintiff obtain direct evidence of the official's knowledge. Rather, such knowledge can be proved by circumstantial evidence and logical inference, i.e., by the existence of known facts from which it would be reasonable for an official to infer that a substantial risk exists.

17. The events giving rise to this action occurred at HDSP, which is a Level IV (maximum security) facility located in Susanville, California.

18. In 2015, the California Senate Committee on Rules authorized the Office of the Inspector General ("OIG") to review practices at HDSP with respect to "[p]rotection of inmates from assault and harm by others," among other issues.[1] This review was authorized based on the Senate Committee's receipt of a concerning number of allegations related to "overt racism" and allegations "that some members of custody staff at HDSP refer to inmates as 'sodomites' or 'sex offenders' in the presence of other inmates and disclose inmates' commitment offenses, placing inmates at risk of harm from other inmates."[2]

19. Following an extensive investigation, the OIG found that "[t]here is evidence that a perception of insularity and indifference to inmates exists at High Desert State Prison, exacerbated by the unique geographical isolation, the high stress environment, and a labor organization that opposes oversight to the point of actively discouraging members from coming forward with information that could in any way adversely affect another officer. These aspects coupled with the difficult missions at HDSP have helped create an entrenched culture of self-protection and loyalty to HDSP above everything else."[3] The

---

[1] OFF. OF THE INSPECTOR GEN., 2015 SPECIAL REVIEW: HIGH DESERT STATE PRISON SUSANVILLE, CA i (2015), https://www.oig.ca.gov/wp-content/uploads/2019/05/2015_Special_Review_-_High_Desert_State_Prison.pdf.

[2] *Id.*

[3] *Id.* at ii.

report also "depict[s] a culture of indifference perpetuated by at least some staff . . . [which] makes it difficult for vulnerable inmates, whether by commitment offense or disability, to program safely. Hardline officers run some yards with little regard for vulnerable inmates. The most extreme example is the Level IV sensitive needs yard (SNY) facility, which is just as violent as the general population (GP) yards, with gang politics meting out abuse and punishment for drug and gambling debts and extorting vulnerable inmates for protection, all of which is exacerbated by the tacit acquiescence of custody staff."[4]

20. In addition to a culture of indifference and acquiescence to gang politics, there is "an entrenched culture of self-protection and loyalty" among HDSP staff.[5] This culture is based in part on the fact that HDSP is the largest employer in remote Lassen County.[6]

21. Consistent with the complaints received by the Senate Committee, the OIG found that HDSP is chronically plagued by overt racism and violence against inmates with sex offenses in their criminal records.[7] For example, there were numerous allegations that officials referred to nonwhite inmates using "the N-word or wetback," and that officials allowed white inmates to access the canteen before their nonwhite counterparts.[8] There were also numerous allegations that "staff told inmates that other inmates were sex offenders, or had shown them classification documents or let them view the electronic inmate records retained in the Strategic Offender Management System (SOMS), showing that an inmate had an R suffix. Having an R suffix carries a major stigma in prison and

---

[4] *Id.*

[5] *Id.*

[6] *See id.* at 7 ("Due to the remote location and distance from other communities, HDSP and CCC mostly pull staff from the local community of Susanville. More so than any other prison locale, those that work at the prisons also interact outside the prison on a daily basis. According to former HDSP staff, many employees' family members work together, socialize together, grew up together, and went to school together.").

[7] *Id.* at 11-12, 19-26.

[8] *Id.* at 11.

can jeopardize an inmate's safety by setting the inmate up for assault or extortion for protection from assault."[9] Even "more commonly, inmates are told by other inmates to show their paperwork, which includes the inmate's commitment offense. Inmates who are celled together regularly show each other their paperwork. This occurs on general population yards, as well as sensitive needs yards."[10]

22. While the OIG report was issued in 2015, these patterns continue today, as evidenced by the recent rash of murders and attempted murders arising from the disclosure and dissemination of inmates' confidential/sensitive information.[11] Moreover, these patterns have been exacerbated by the entrenchment of several high-ranking members of the AB.

23. High-ranking validated AB members such as William Lutts ("Lutts") and Pat Brady ("Brady") are permitted to dominate and control the ethnically white inmate population, and HDSP officials have effectively ceded control over many aspects of prison life to these individuals. In exchange for preferential treatment by staff, high-ranking AB members like Lutts and Brady are permitted to set rules, issue orders, and maintain discipline among white inmates.

24. HDSP officials, including those named as defendants to this action, have permitted this to occur even though these individuals have been repeatedly implicated in ordering the assault or murder of other inmates for violating AB rules, including, but not limited to:

    a. Having a sex offense or crime against women in their criminal record;

    b. Failing to produce or adequately explain their criminal record; and

    c. Failing to carry out orders to assault and murder other inmates.

25. Not only are HDSP officials aware that high-ranking AB members have repeatedly ordered assaults and murders based on such infractions, they are also aware of the

---

[9] *Id.* at 19.

[10] *Id.*

[11] *See, e.g.*, Complaint, Greene v. CDCR et al., No. 23-cv-00082-WBS-DMC (E.D. Cal. Jan 13, 2023), ECF No. 1.

7

underlying dynamics. For example, HDSP officials are aware that all white inmates are required to produce their "paperwork" upon arrival at HDSP and that this paperwork, and the information derived from it, can be easily accessed by both inmates and staff. The officials are also aware that if a white inmate violates one of the AB's rules, e.g, by having a sex offense in their criminal record or by refusing to carry out an assault, he is very likely to be targeted.

26. Consistent with the pattern described in the OIG report, when Michael Hastey ("Hastey") arrived at HDSP in late 2021, the AB quickly learned two critical facts: (1) that he had a sex offense in his criminal record; and (2) that he was the biological son of Jason Hastey, who was an officer at HDSP.[12]

27. Based on this information, Lutts decided that Hastey needed to die, and he ordered CHAVEZ to make it happen. When CHAVEZ refused, Hastey was murdered by two other AB-affiliated inmates wielding seven-inch knives made from metal stripped from the inmates' beds.

28. But CHAVEZ was not off the hook. Having refused Lutts' order to carry out Hastey's murder, CHAVEZ became a target, and on May 14, 2022, he was himself attacked by inmates wielding eight-inch knives, again made from metal stripped from the inmates' beds.

29. This attack occurred on the C Yard and in full view of several correctional officials, including Defendants YOCIUS, MEJIA, and SHERMAN.

30. Yet these officials did not take reasonable steps to intervene. Instead, YOCIUS shot CHAVEZ in the shoulder and, on information and belief, other officers, including MEJIA and SHERMAN, deployed chemical agents that severely burned CHAVEZ's legs.

31. During the attack, CHAVEZ was stabbed approximately thirty-seven times.

32. This brutal assault and the officers' botched response was directly and proximately caused by HDSP officials' failure to take the following reasonable available measures:

---

[12] *See generally id.*

     a. Transferring those high-ranking AB members who have been implicated in various murders;

     b. Restricting access to, or otherwise gaining control of the flow of, confidential/sensitive information derived from inmates' criminal records and CDCR files,

     c. Restricting access to, or otherwise gaining control of the flow of, the metal used to manufacture deadly weapons;

     d. Adequately searching inmates, staff, and other individuals with access to the C Yard;

     e. Adequately sweeping the C Yard to locate weapons that were buried or hidden;

     f. Developing and training staff to implement a framework for adequately preventing and responding to inmate-on-inmate assaults; and

     g. Disciplining staff for facilitating or otherwise failing to prevent and respond to such assaults.

33. By failing to take such measures, the officials, including Defendants ST. ANDRE, KNEDLER, RICHARDSON, and DOES 6-10, have created and tolerated an environment in which inmates are exposed to an intolerable risk. If you are an inmate with a sex offense in your record, it is a near certainty that this will be discovered by the AB. And if you are unable to provide an adequate explanation, you are likely to be targeted. Similarly, if you are an inmate who is ordered by the AB to murder another inmate and you refuse, you are likely to be targeted.

34. Once you make this Hobson's choice, the AB and its enforcers will have no difficulty manufacturing a deadly weapon and smuggling it onto the yard through a porter, staff member, or other individual who is unlikely to be searched.

35. And once the attack is underway, your life is in the hands of officers who are either indifferent to your plight or inadequately trained to respond.

36. Thus, on February 18, 2022, the officers on the C Yard, including Defendants YOCIUS and MEJIA, failed to fire a single shot while Hastey was stabbed over 100 times. And on May 14, 2022, Defendants YOCIUS, MEJIA, SHERMAN, and DOES 1-5 shot and severely burned CHAVEZ while he was stabbed approximately thirty-seven times.

37. The individual defendants are therefore liable for violating CHAVEZ's Eighth Amendment right to be protected from violence at the hands of guards and other inmates.

## PRAYER FOR RELIEF AND JURY DEMAND

WHEREFORE, Plaintiff demands the following relief jointly and severally against the individual defendants:

A trial by jury;

A judgment ordering all defendants to pay compensatory damages in an amount to be determined at trial and punitive damages in an amount sufficient to deter such conduct in the future;

Attorneys' fees, costs, and interest, pursuant to 42 U.S.C. §§ 1983 and 1988; and

Such other and further relief as this Court deems appropriate.

DATED this 14th day of May 2024.   Kopke Christiana & Rastetter LLP

*/s/ Andrew Kopke*
Andrew J. Kopke, SBN 340036

*Attorney for Plaintiff*
MICHAEL CHAVEZ